MELANIE BRYANT,                          )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )     No.  4:07CV802 ERW
                                         )                  (FRB)
MICHAEL J. ASTRUE, Commissioner          )
of Social Security,                      )
                                         )
                    Defendant.           )

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal for review of an adverse ruling by the Social Security Administration.  All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) for appropriate disposition.

### I. Procedural History

On July 13, 2005, plaintiff Melanie Bryant filed an application for Supplemental Security Income (SSI) pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq.; and an application for Disability Insurance Benefits (DIB) pursuant to Title II, 42 U.S.C. §§ 401, et seq., in which she claimed that she became disabled and unable to work on August 5, 2003.  (Tr. 30A-36, 64-74.)  On initial consideration, the Social Security Administration denied plaintiff's applications for benefits.  (Tr. 30, 39, 54-58.)  On July 21, 2006, a hearing was held before an Administrative Law Judge (ALJ).  (Tr. 210-31.)  Plaintiff testified and was represented by counsel.  Plaintiff's father also testified

at the hearing.  On September 19, 2006, the ALJ issued a decision denying plaintiff's claims for benefits.  (Tr. 8-21.)  On March 29, 2007, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  (Tr. 2-4.)  The ALJ's determination thus stands as the final decision of the Commissioner.  42 U.S.C. § 405(g).

## II.  Evidence Before the ALJ

A.  <u>Testimony of Plaintiff</u>

At the hearing on July 21, 2006, plaintiff testified in response to questions posed by the ALJ and counsel.

In 1994 and 1995, plaintiff worked as a cashier and cook at a snack bar at the airport.  (Tr. 140, 212.)  At this job, plaintiff made pizza and hot dogs, served ice cream, and cashiered.  (Tr. 146.)  In 1996 and 1997, plaintiff worked as a cashier/ stockperson at a grocery store.  In 1998 and 1999, plaintiff worked as a cashier at a McDonald's restaurant.  (Tr. 140.)  In 1998 and 1999, plaintiff worked as a nurse's assistant at a nursing home, at which plaintiff filled water pitchers and checked on patients.  (Tr. 140, 143.)  From 2000 to 2003, plaintiff worked as a cashier at a grocery store at which she cashiered and stocked shelves.  (Tr. 140, 142.)  In May and June 2005, plaintiff worked as an office cleaner with a janitorial service at which plaintiff cleaned restrooms and restocked paper products.  (Tr. 140, 141.)  Plaintiff testified that she then obtained a job through MERS-Goodwill and was currently working part-time in a school cafeteria doing food preparation.  Plaintiff testified that she was scheduled to return

to that job in one month, after summer break.  Plaintiff testified that she has had the job for one year.  (Tr. 218.)

Plaintiff testified that her work at the airport went "okay" but that there were not enough hours.  (Tr. 212-13.) Plaintiff testified that she had difficulty with her first job at the grocery store because, although she got along with everybody, she was often distracted and could not focus.  Plaintiff testified that she was terminated from that job.  (Tr. 213.)  Plaintiff testified that she then applied for and obtained the job at McDonald's but that the job did not work out.  Plaintiff testified that she did her best but that her employer said she did not know what she was doing.  (Tr. 213-14.)  Plaintiff testified that her work at the nursing home went well but that she experienced the same problem with distraction and had difficulty focusing on what she was doing.  Plaintiff testified that she was not terminated from that job but quit because she was not getting enough hours and wanted employment closer to home.  (Tr. 214.)  Plaintiff testified that she then worked for three years at a grocery store on a part-time basis during which her main job duties were cashiering, stocking and cleaning.  (Tr. 214-15.)  Plaintiff testified that she was given no special consideration nor accorded any accommodation with the job.  Plaintiff testified that she went to work and did what she needed to do, but was terminated from the job for not minding her own business.  Plaintiff testified that she also experienced distraction with this job as she had with her other jobs.  (Tr. 215.)  Plaintiff testified that she applied for and

obtained a job at Cracker Barrel in March 2006 but was terminated after three months when cash shortages were discovered. Plaintiff testified that she suffered from distraction with this job as well. (Tr. 220-21.) With respect to her current job at the cafeteria, plaintiff testified that she has a job coach who occasionally checks with her to see if she is alright. (Tr. 219.) Plaintiff testified that she maintains contact with MERS-Goodwill to inform them that things continue to go well with her job at the school. (Tr. 222.)

Plaintiff testified that she recently began seeing a psychiatrist, Dr. Hicks. (Tr. 216.) Plaintiff testified that Dr. Hicks has prescribed Strattera for her and that she has noticed a change in her behavior. Plaintiff testified that she can focus and do normal things now and that she feels fine. (Tr. 221.) Plaintiff testified that she knows she is doing well but must see Dr. Hicks for follow up. (Tr. 222.)

B.  Testimony of Plaintiff's Father

Joe Bryant, plaintiff's father, testified at the hearing in response to questions posed by the ALJ and counsel.

Mr. Bryant testified that plaintiff was adopted in 1973 when she was two weeks old and continues to live with him. (Tr. 226.) Plaintiff was currently thirty-three years of age. (Tr. 227.) Mr. Bryant testified that plaintiff has had difficulties performing jobs because "her mind would run all afar." (Tr. 226.) Mr. Bryant testified that plaintiff has attempted simple work in the past but that she had quotas that she could not meet. Mr.

Bryant testified that plaintiff works three hours a day at her current job in the school cafeteria. (Tr. 227.) Mr. Bryant testified that he has received reports from her current managers that plaintiff creates difficulties on this job because of her continued talking which delays the process through the cafeteria line. (Tr. 227-28.)

Mr. Bryant testified that plaintiff cannot take care of herself and that he and his wife would need to continue to act as guardians for plaintiff in the event she were to obtain assistance. Mr. Bryant testified that plaintiff was not responsible enough to attend to matters such as paying rent and bills. (Tr. 228.)

Mr. Bryant testified that plaintiff watches television at home. Plaintiff does not cook. Mr. Bryant testified that despite instruction, plaintiff is unable to do laundry. Mr. Bryant testified that plaintiff can drive a car. (Tr. 229.) Mr. Bryant testified that plaintiff cannot focus and is unable to do what she is told to do. (Tr. 230.)

### III. Medical, School and Vocational Records

In a report dated December 12, 1983, the Special School District of St. Louis County informed plaintiff's parents that a diagnostic team with the district determined plaintiff to be behaviorally disordered, learning disabled and speech impaired. Plaintiff was at that time repeating the fourth grade. It was noted that plaintiff had been enrolled in speech therapy since May 1983 to address an articulation problem (th/s substitution) and that plaintiff had emotional problems which contributed to her

academic difficulties. It was recommended that plaintiff and her parents participate in therapy. (Tr. 98-99.)

On October 26, 1990, plaintiff underwent speech-language evaluation through the Special School District. (Tr. 128-31.) It was noted that plaintiff was seventeen years of age. (Tr. 128.) Plaintiff's voice quality and rhythm were within normal limits. Plaintiff's rate of speech was adequate. (Tr. 129.) In word testing, plaintiff scored in the ninetieth percentile in association, the ninety-fourth percentile in synonyms, the seventy-ninth percentile in antonyms, and the eighty-sixth percentile in definitions. (Tr. 130.) Plaintiff's use of expressive and oral language was within expectancy. (Tr. 131.)

On November 12, 1990, plaintiff was evaluated by the Special School District for purposes of preparing a Psycho/ Educational Profile. Plaintiff's current Wechsler IQ scores were noted to be verbal, 92; performance, 74; and full scale, 82. (Tr. 127.)

In a Reevaluation Summary prepared by the Special School District on November 26, 1990, the diagnostic team determined plaintiff to be behaviorally disordered and learning disabled:

> Current intellectual assessment reveals global cognitive functioning within the Low Average range although there are indications of higher potential. Significant strengths are evident in short term auditory memory and long term recall of factual information. All other measured skills range from significantly deficient to low average. It appears that Melanie's ability to assimilate and retain concrete factual information is stronger than her ability to apply that information in

higher level thought processes. Excessive and seemingly driven verbal behavior generally interferes with efficient verbal and nonverbal problem solving.

Academically, Melanie demonstrates age appropriate achievement in reading (Standard Score 95) and written language (standard score 91), supporting the possibility that actual intellectual potential may be higher than measured. Overall math skills are evenly developed but below age expectations (standard score 82). Skills in the area of Broad Knowledge are only mildly below age expectations.

Melanie's expressive and receptive language in the areas of content, form and use is adequately developed.

Melanie continues to exhibit significant behavioral concerns. She is frequently off task, does not always obey classroom rules, makes inappropriate comments and engages in excessive conversation. She has shown progress recently with consistent, firm structure in her classroom and vocational programming.

This diagnostic team certifies that these handicaps require special education and related services. Environmental, cultural, and economic factors have been reviewed and are not considered to be significantly related to the deficits found. Additionally, these handicaps do not appear to be primarily caused by visual acuity deficits, auditory acuity deficits, motor deficits, language disability, mental retardation, dialectal differences, or second language influence.

(Tr. 124-25.)

It was determined that continuation of current IEP (Individualized Educational Plan) goals and objectives was appropriate. (Tr. 125.)

In an IEP dated November 18, 1992, the Special School District recommended that plaintiff be placed at Village North

Retirement Center in a continued transitional/vocational program. It was noted that plaintiff's functional skills (academic), work experience/on the job training, and work-related social skills could not be accommodated in a regular classroom. (Tr. 114-20.) It was noted that plaintiff had received all of her services with a special education teacher and received no regular education services. (Tr. 115.) It was noted that plaintiff was participating in a career transitional plan and had obtained a certificate of completion. (Tr. 114.) As to plaintiff's current level of performance, it was noted that plaintiff was working a half-day on an actual job site and had recently passed the written and on-the-road test for her driver's license. Areas of concern including socialization within the classroom and on the job site. (Tr. 116.) Goals and objectives were identified for plaintiff. (Tr. 117-18.)

On May 3, 1993, the Special School District terminated plaintiff's IEP due to her graduation. (Tr. 109-13.) It was noted that a high school diploma was expected inasmuch as plaintiff had completed her prescribed course of study. (Tr. 109-10.)

From August 28 through September 7, 1995, plaintiff participated in a 40-Hour Supported Employment Assessment through Metropolitan Employment and Rehabilitation Service (MERS) for evaluation of her work skills and behaviors. It was noted that plaintiff was borderline intellectual functioning with limited ability to implement sequential tasks over seven steps and limited ability to inhibit social interactions. Upon conclusion of such

assessment, it was recommended that plaintiff be referred to the MERS/Lippman Center for Supported Employment Job Development and Job Coaching.  Job matching strategies were provided.  (Tr. 95-96.)

On January 21, 2004, plaintiff underwent psychological evaluation at the Neuropsychology Clinic at Forest Park Hospital. (Tr. 202-07.)  John R. Hogg, Ph.D., noted plaintiff's evaluation to be for the purpose of clarifying her cognitive and academic skills as well as her emotional status.  It was noted that plaintiff lived with her adoptive parents.  Plaintiff reported to Dr. Hogg that she attended many grade schools but did not recall academic problems other than math.  Plaintiff denied any behavioral problems in grade school but vaguely referenced some inattention.  Plaintiff reported being easily distracted in junior high and that she took Ritalin in seventh grade for inattention.  Plaintiff denied behavioral problems in junior high and had no recollection of academic problems.  Plaintiff reported having academic problems in math and science in ninth grade and that she was transferred to the Special School District for the tenth through twelfth grades.  Plaintiff reported having less concerns with attention during high school. Plaintiff reported her work history and reported that she was fired from her job at the grocery store because she caught a manager stealing.  (Tr. 202.)  Plaintiff reported working from August through October 2003 packing items through a temporary agency but was fired because she failed to meet her quota.  (Tr. 202-03.)  It was noted that plaintiff currently took no medications.  Plaintiff had no history of mental health diagnosis or treatment.  Plaintiff

reported having appropriate recent and remote memory but noted having intermittent attention difficulty. Plaintiff reported having no problems with basic activities of daily living or with instrumental activities of daily living, such as managing money and cooking. Behavioral observations during testing showed plaintiff to attend to tasks adequately and to understand testing instructions easily. Plaintiff approached items in an organized manner. (Tr. 203.) On the WAIS-3, plaintiff achieved the following IQ scores: verbal, 85; performance, 84; full scale, 84. Plaintiff also underwent evaluation on the Woodcock Johnson-Revised test, the 21 Item test, and Personality Assessment Inventory. (Tr. 206-07.) Dr. Hogg noted plaintiff's measured performance to be at the upper limit of diagnostic criteria for borderline intellectual functioning. Plaintiff displayed low average reading, arithmetic and written expression skills. Plaintiff's measured academic skills were not sufficiently discrepant from her measured intellectual functioning, however, to meet the formal diagnostic criteria for learning disability. (Tr. 203.) In conclusion, Dr. Hogg diagnosed plaintiff with borderline intellectual functioning and made the following observations/recommendations:

> Ms. Bryant will do better on nonverbal reasoning tasks than verbal reasoning tasks. She may do best with work tasks which do not require advanced academic skills or rapid rate of responding. She displayed widely variable visual-spatial skills but did best on tasks involving nonverbal reasoning. She may benefit from vocational counseling and vocationally-oriented evaluations to better identify her visual spatial strengths and to determine the vocational relevance of such

strengths.

(Tr. 204.)

On February 11, 2004, counselor Brenne Ardrey with the state's Division of Vocational Rehabilitation (DVR) completed an assessment classifying plaintiff's impairments. In this assessment, Ms. Ardrey opined that plaintiff had cognitive impairments due to borderline intellectual functioning with maladaptive behaviors which resulted in functional limitations in reading, math, written expression, avoidance of new experiences due to fear of failure, and difficulty with independent living. (Tr. 198, 105.) Ms. Ardrey opined that plaintiff's impairment resulted in a substantial impediment to employment, and specifically, that plaintiff must avoid employment which is likely to aggravate her disability and that plaintiff's disability interferes with preparation for an occupation commensurate with her capacities and abilities. (Tr. 198.) Ms. Ardrey classified plaintiff's disability as "significant" in that plaintiff was seriously limited in the functional capacities of self-direction and work skills; was expected to require multiple vocational rehabilitation services over an extended period of time; and had one or more disabilities determined on the basis of an assessment for determining eligibility and vocational rehabilitation needs to cause comparable substantial functional limitation. (Tr. 199-200.)

On February 17, 2005, counselor Ardrey completed another assessment classifying plaintiff's impairments. Ms. Ardrey classified plaintiff's disability as "most significant" in that

plaintiff was seriously limited in the functional capacities of self-care, self-direction and work skills. (Tr. 102-04.)

On December 12, 2005, J.W. Lane, a medical consultant with Disability Determinations, completed a Mental Residual Functional Capacity Assessment (Tr. 90-92), wherein it was opined that plaintiff's impairments

> cause impaired variable but overall moderately impaired social functioning and variable but overall mildly impaired [concentration, persistence and pace] functioning. [Claimant] cannot complete work that involves significant public contact and/or teamwork and should avoid work that involves complex/detailed material and/or relies upon academic skills. Some of the seeming moderately impaired [concentration, persistence and pace] ratings herein are solely due to the social nature of those criteria.
>
> The [claimant] retains the functional capacity to: interact adequately with peers and supervisors; understand, follow, and complete at least simple instructions; maintain adequate concentration, persistence, and pace with at least simple work duties; and adapt adequately to routine work changes.
>
> There is no objective / credible evidence the [claimant] cannot complete at least simple repetitive work.
>
> [Claimant] should enter professional counseling in order to enhance vocational functioning.
>
> [Claimant] would benefit from vocational rehabilitation.

(Tr. 92.)

On July 14, 2006, plaintiff visited Dr. F.G. Hicks at Allied Behavioral Consultants. Plaintiff was accompanied by her

father.  Mr. Bryant reported to Dr. Hicks that plaintiff has had "some complications."  It was noted that plaintiff was attempting to obtain disability.  It was noted that plaintiff had been involved with the Special School District and with vocational rehabilitation.  Plaintiff was noted to require much redirection and reminding to complete tasks.  Plaintiff reported to Dr. Hicks that she felt her use of Ritalin in junior high helped her to focus at school.  Plaintiff reported that she recently had some problems with her work in that her cash register came up short, and that she never understood about shortages.  Plaintiff reported that she needs "alone time" and that she stays to herself a lot.  Plaintiff reported that communication has always been a problem and that she felt that she was not like anyone else.  Plaintiff reported having occasional obsessive thoughts about others' attempts to communicate, compulsive inattention to tasks, and dissociative feelings.  Plaintiff denied low mood, sleep disturbance, appetite disturbance, crying spells, fatigue, poor motivation and interest, irritability, self deprecating thoughts, concentration problems, memory problems, morbid thoughts, suicidal thoughts, psychosis, panic, phobias, eating disorders, or manic symptoms.  Plaintiff reported having occasional tension headaches.  It was noted that plaintiff currently took no medication.  As to plaintiff's social history, Dr. Hicks noted plaintiff to have a high school education. It was noted that plaintiff had had several jobs and had been working at Cracker Barrel for four months.  Mr. Bryant reported that plaintiff talked all the time and could not hold her thoughts.

For recreation, it was noted that plaintiff went to the mall and to the movies.  Mental status examination showed plaintiff to have good eye contact and a serious facial expression.  Plaintiff's affect was euthymic and somewhat indifferent.  Plaintiff's speech was noted to have normal rhythm, rate and prosody.  Plaintiff's flow of thought was good and her insight and judgment were noted to be fair.  As to memory, Dr. Hicks noted plaintiff's calculations to be good and that plaintiff repeated six of seven digits and was able to recall three of three objects at two minutes.  Upon conclusion of the examination, Dr. Hicks diagnosed plaintiff with possible Asperger's disorder, and borderline intellectual functioning.  Dr. Hicks also diagnosed possible avoidant personality disorder, rule out schizoid personality disorder.  Dr. Hicks assigned plaintiff a Global Assessment of Functioning (GAF) score of 55/65.[1]  Dr. Hicks determined to consider Strattera[2] for plaintiff as well as an evaluation through the Judavine Center.  It

---

[1]A GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health/ illness."  A GAF score of 51 to 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34 (4th ed. 2000).  A GAF score of 61 to 70 indicates some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.  Id.

[2]Strattera is used to increase the ability to pay attention and decrease impulsiveness and hyperactivity in persons with Attention Deficit and Hyperactivity Disorder.  Medline Plus (last revised May 1, 2007)<http://www.nlm.nih.gov/medlineplus/druginfo/ medmaster/a603013.html>.

was noted that plaintiff would continue with her efforts at disability and was instructed to return to Dr. Hicks in four weeks. (Tr. 194-96.)

## IV.  The ALJ's Decision

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on August 5, 2003, and would continue to meet them through September 30, 2010.  The ALJ also found that plaintiff had not engaged in substantial gainful activity since 2003 despite posted wages in 2004 and 2005. The ALJ found plaintiff to have borderline intellectual functioning but that she did not have an impairment or combination of impairments which met or medically equaled any impairment listed in Appendix 1, Subpart P, Regulations No. 4.   The ALJ found plaintiff's allegations of symptoms precluding light work not to be credible.  (Tr. 20.)  The ALJ determined that plaintiff had the residual functional capacity (RFC) to occasionally lift twenty pounds, frequently lift ten pounds, perform seated operation of arm or leg controls, and walk and/or stand a majority of the workday. The ALJ found plaintiff to be limited to performing simple repetitive work.  The ALJ determined that plaintiff's limitations did not preclude performance of her past relevant work as a school cafeteria kitchen helper, fast food restaurant cashier, grocery clerk/cashier, or snack bar food prep/cashier.  Accordingly, the ALJ determined that plaintiff was not under a disability at any time through the date of the decision.  (Tr. 21.)

## V. Discussion

To be eligible for Social Security Disability Insurance Benefits and Supplemental Security Income under the Social Security Act, plaintiff must prove that she is disabled. <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001); <u>Baker v. Secretary of Health & Human Servs.</u>, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits

her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or is equal to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Estes v. Barnhart</u>, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. <u>Johnson v. Apfel</u>, 240 F.3d 1145, 1147 (8th Cir. 2001).

To determine whether the Commissioner's decision is supported by substantial evidence, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4.    The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.    Any corroboration by third parties of the plaintiff's impairments.

6.    The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

<u>Stewart v. Secretary of Health & Human Servs.</u>, 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The Court must also consider any evidence which fairly detracts from the Commissioner's decision.  <u>Warburton v. Apfel</u>, 188 F.3d 1047, 1050 (8th Cir. 1999).  However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence.  <u>Pearsall</u>, 274 F.3d at 1217 (citing <u>Young v. Apfel</u>, 221 F.3d 1065, 1068 (8th Cir. 2000)).  A Commissioner's decision may not be reversed merely because substantial evidence also exists that would support a contrary outcome.  <u>Jones ex rel. Morris v. Barnhart</u>, 315 F.3d 974, 977 (8th Cir. 2003).

Plaintiff claims that the ALJ's decision is not supported by substantial evidence on the record as a whole.  Specifically, plaintiff contends that the ALJ failed to properly evaluate plaintiff's residual functional capacity in that the determination was based upon an underdeveloped record and was not based upon medical evidence, and that the ALJ failed to consider all of plaintiff's impairments and assessments relating thereto. Plaintiff further contends that the ALJ failed to properly consider

- 18 -

plaintiff's subjective complaints and third party observations under the standards articulated in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).  Finally, plaintiff argues that the ALJ failed to undergo the proper function-by-function analysis in determining plaintiff able to perform her past relevant work.

A.   Credibility Determination

Before determining a claimant's RFC, the ALJ must first evaluate the claimant's credibility.  Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007); Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005).  In determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted).  Although the ALJ may not discount subjective complaints on the sole basis of personal observation, he may disbelieve a claimant's complaints if there are inconsistencies in the evidence as a whole.  Id.

When, on judicial review, a plaintiff contends that the ALJ failed to properly consider her subjective complaints, "the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the Polaski standards and whether the evidence so contradicts the

plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." Masterson v. Barnhart, 363 F.3d 731, 738-39 (8th Cir. 2004). It is not enough that the record merely contain inconsistencies. Instead, the ALJ must specifically demonstrate in his decision that he considered all of the evidence. Id. at 738; see also Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991). Where an ALJ explicitly considers the Polaski factors but then discredits a claimant's complaints for good reason, the decision should be upheld. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001); see also Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007). The determination of a claimant's credibility is for the Commissioner, and not the Court, to make. Tellez, 403 F.3d at 957; Pearsall, 274 F.3d at 1218.

In this cause, the ALJ set out numerous inconsistencies in the record to support his conclusion that plaintiff's complaints were not credible. First, the ALJ noted that despite complaints of plaintiff having difficulty with attention and focusing, testing conducted by psychologist Hogg showed no evidence of significant attention problems and there was no evidence in the record which referenced an attention disorder. See Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (no objective evidence to support subjective complaint). In addition, the ALJ noted that plaintiff appeared to have no such difficulties during the administrative hearing. See Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) (ALJ's personal observation of claimant's demeanor during hearing is proper in making credibility determination). The ALJ

noted that although plaintiff reportedly had taken Ritalin in junior high school, she did not seek or receive any treatment as an adult until July 2006. _See_ _Gregg_, 354 F.3d at 713 (claimant's failure to seek consistent treatment supported adverse credibility determination). The ALJ also noted that since childhood, plaintiff had been consistently diagnosed with borderline intellectual functioning but was able to complete the requirements to obtain her high school diploma and was able to perform various jobs thereafter despite such impairment. _See_ _Goff v. Barnhart_, 421 F.3d 785, 792-93 (8th Cir. 2005) (claimant having worked with impairment and lack of evidence that condition deteriorated supported adverse credibility determination); _Gregg_, 354 F.3d at 713 (same). The ALJ noted that there were no reports in the record from employers or vocational counselors indicating that plaintiff experienced difficulties with her jobs, and that plaintiff quit various of her jobs due to reasons which were not related to her performance. _See_ _Goff_, 421 F.3d at 793 (significant to credibility determination when a claimant leaves work for reasons other than impairment). Indeed, as noted by the ALJ, psychologist Hogg identified work tasks plaintiff would be able to perform and recommended vocational counseling and evaluations to help identify plaintiff's strengths. Such findings are inconsistent with an inability to perform work. The ALJ also noted the two vocational reports from DVR counselor Ardrey but found them to be confusing and dissimilar, noting that nothing in the record accounted for the counselor's conclusions regarding the degree of plaintiff's disability and/or the

differences between the two reports.  In addition, the ALJ noted there to be no reported ineffectiveness of and/or side effects from plaintiff's recently prescribed medication, and that no physician imposed any functional limitations.  Gregg, 354 F.3d at 713 (no physician opinion that claimant was disabled).  Finally, the ALJ noted that plaintiff's activities, including her work activity, were inconsistent with an inability to perform work.  See Goff, 421 F.3d at 792-93 (claimant having worked with impairment and lack of evidence that condition deteriorated supported adverse credibility determination); Gregg, 354 F.3d at 713 (same).  These reasons to find plaintiff's subjective complaints not to be credible are supported by substantial evidence on the record.

Plaintiff contends that the ALJ's finding that no objective medical evidence supports plaintiff's claims is belied by records from the Special School District, the Division of Vocational Rehabilitation, MERS-Goodwill, and Dr. Hicks.  As noted by the ALJ, however, the only consistent diagnosis throughout all of these records is that of borderline intellectual functioning and the record shows plaintiff to have been able to work and perform work-related functions with such impairment.  In addition, as noted above, the ALJ provided reasons not to give great weight to the reports of Ms. Ardrey from the DVR.  The ALJ also noted that plaintiff had seen Dr. Hicks on one occasion one year after she applied for benefits, and that plaintiff testified that she had obtained favorable results from the medication prescribed by Dr. Hicks in that she could focus and felt she could do normal things.

Cf. Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997) (impairments that are controllable or amenable to treatment do not support finding of disability).  To the extent plaintiff argues that her use of a job coach through MERS-Goodwill in itself demonstrates her "inability to engage in a sustained substantial gainful activity independently" (Pltf.'s Brief at pp. 18-19), the undersigned notes that in McKinney v. Apfel, 228 F.3d 860 (8th Cir. 2000), the claimant was determined not to be disabled despite his use of job coaches.  Id. at 863-65.

Plaintiff also argues that the ALJ erred in relying on plaintiff's failure to seek treatment inasmuch as the ALJ was required but failed to first determine whether such treatment would have restored plaintiff's ability to work or sufficiently improve her condition.  Plaintiff's argument is misplaced.  An otherwise disabled claimant may be denied benefits on the basis that she has failed to follow prescribed treatment.  See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001).  In such circumstances, the ALJ must determine whether compliance with treatment would restore the claimant's ability to work.  Id.; 20 C.F.R. §§ 404.1530, 416.930.  In the instant case, however, the ALJ analyzed the evidence of plaintiff's failure to seek treatment solely to weigh the credibility of her subjective complaints, and not as a basis upon which to deny benefits.  This use of evidence of failure to seek treatment, without determining whether such treatment would restore plaintiff's ability to work, is permissible.  Holley, 253 F.3d at 1092.

Plaintiff also contends that contrary to the ALJ's finding, her lack of significant work history bolsters her credibility inasmuch as the nature of her impairment would preclude an impressive work record. A review of the ALJ's decision, however, does not show him to have determined plaintiff's work history to be lacking. Instead, the ALJ noted that plaintiff had posted earnings since 1991 and had an earnings level from 1997 through 2003 which constituted substantial gainful employment. (Tr. 19.) Inasmuch as plaintiff worked with her impairment during this period and no evidence in the record showed plaintiff's condition to have deteriorated, the ALJ properly relied on plaintiff's work record to support his finding that plaintiff's subjective complaints were not credible.

Finally, plaintiff claims that the ALJ failed to consider the testimony of plaintiff's parents in this matter.[3] Contrary to plaintiff's assertion, a review of the ALJ's decision shows him to have thoroughly reviewed the testimony of plaintiff's father (Tr. 16-17) and to have considered such testimony in determining the credibility of plaintiff's subjective complaints (Tr. 18, 20). Although the ALJ did not list specific reasons to discredit the testimony of Mr. Bryant, it is evident that the same evidence that discredited plaintiff's own testimony concerning her limitations likewise discredited Mr. Bryant's testimony. The ALJ's failure to delineate specific reasons to discredit Mr. Bryant's testimony does

_____

[3]A review of the record shows that in addition to plaintiff, only plaintiff's father provided testimony in this matter.

not detract from the substantial evidence to support the ALJ's determination that plaintiff's subjective complaints were not credible. See Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000); Lorenzen v. Chater, 71 F.3d 316, 319 (8th Cir. 1995).

A review of the ALJ's decision shows that, in a manner consistent with and as required by Polaski, the ALJ considered plaintiff's subjective complaints on the basis of the entire record before him and set out numerous inconsistencies detracting from plaintiff's credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). Because the ALJ's determination not to credit plaintiff's subjective complaints is supported by good reasons and substantial evidence, this Court must defer to the ALJ's credibility determination. Goff, 421 F.3d at 793; Vester v. Barnhart, 416 F.3d 886, 889 (8th Cir. 2005); Gulliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).

B.   Residual Functional Capacity

Plaintiff claims that in making his RFC determination, the ALJ failed to consider all of plaintiff's medically determinable impairments, failed to consider medical evidence, and failed to ensure that the record was fully and fairly developed. The undersigned will address each of plaintiff's contentions in turn.

Residual functional capacity is what a claimant can do despite her limitations. Dunahoo v. Apfel, 241 F.3d 1033, 1039

- 25 -

(8th Cir. 2001). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. <u>Goff</u>, 421 F.3d at 793; 20 C.F.R. §§ 404.1545(a), 416.945(a). A claimant's RFC is a medical question, however, and some medical evidence must support the ALJ's RFC determination. <u>Kroqmeier v. Barnhart</u>, 294 F.3d 1019, 1023 (8th Cir. 2002); <u>Hutsell v. Massanari</u>, 259 F.3d 707, 711-12 (8th Cir. 2001); <u>Lauer v. Apfel</u>, 245 F.3d 700, 703-04 (8th Cir. 2001). The ALJ is "required to consider at least some supporting evidence from a [medical professional]" and should therefore obtain medical evidence that addresses the claimant's ability to function in the workplace. <u>Hutsell</u>, 259 F.3d at 712 (internal quotation marks and citation omitted). An ALJ's RFC which is not properly informed and supported by some medical evidence in the record cannot stand. <u>Id.</u> An RFC checklist completed by a non-treating, non-examining physician who has merely reviewed reports is not *medical* evidence as to how the claimant's impairments affect her current ability to function and thus cannot alone constitute substantial evidence to support an ALJ's RFC assessment. <u>See</u> <u>Nevland v. Apfel</u>, 204 F.3d 853, 858 (8th Cir. 2000); <u>Nunn v. Heckler</u>, 732 F.2d 645, 649 (8th Cir. 1984).

     1.   *Medically Determinable Impairments*

     In his written decision, the ALJ found that plaintiff had borderline intellectual functioning, and a history of behavior

disorder, learning disability and speech impairment. The ALJ noted that throughout plaintiff's evaluations and assessments since childhood, she had been consistently diagnosed only with borderline intellectual functioning. Plaintiff argues that the ALJ failed to account for evidence of other diagnoses, however, and specifically, Dr. Hicks' July 2006 diagnoses of possible Asperger's disorder, possible avoidant personality disorder, and rule out schizoid personality disorder; and medical consultant Lane's December 2005 indication of personality disorder.

When determining a claimant's RFC, the Commissioner must consider all of the claimant's medically determinable impairments. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Evidence from acceptable medical sources is needed to establish whether a claimant has a medically determinable impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a); Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007). The impairment

> must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and labora-tory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms[.]

20 C.F.R. §§ 404.1508, 416.908.

The claimant bears the burden of providing such medical evidence to the Commissioner. 20 C.F.R. §§ 404.1512, 416.912.

Notably, none of the diagnoses which plaintiff argues that the ALJ failed to account for constitute medically

determinable impairments. First, Dr. Hicks did not affirmatively diagnose plaintiff with Asperger's disorder or personality disorders. Such conditions were only suspected. In addition, Dr. Hicks' suspicions appear to be based only on plaintiff's and her father's statements of symptoms. The record is devoid of any medically acceptable clinical and laboratory diagnostic techniques which would establish such impairments. Likewise, medical consultant Lane's indication that plaintiff had a personality disorder is not based on any medically acceptable clinical and laboratory diagnostic techniques. Indeed, the medical consultant fails to identify any "[p]ertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment" (Tr. 83) and instead bases this "diagnosis" on remote evidence of behavioral disorder (Tr. 88). Given that plaintiff was last diagnosed with behavioral disorder in November 1990 and that the medical consultant was unable to identify any pertinent symptoms, signs, and laboratory findings that substantiated the presence of this impairment, the ALJ did not err in failing to find that consultant Lane's "diagnosis" of personality disorder constituted a medically determinable impairment. 20 C.F.R. §§ 404.1508, 416.908; cf. Brockman v. Sullivan, 987 F.2d 1344, 1348 (8th Cir. 1993) (ALJ did not err in failing to find that ten-year-old diagnosis of schizophrenia diminished claimant's RFC where there was no current evidence of such impairment); see also Frankl v. Shalala, 47 F.3d 935 (8th Cir. 1995) (error to rely on remote medical evidence to determine RFC; RFC must reflect what work, if

any, claimant is capable of performing at time of the hearing).

Inasmuch as "possible Asperger's disorder," "possible avoidant personality disorder," "rule out schizoid personality disorder," and "indication of personality disorder" did not constitute medically determinable impairments, the ALJ did not err in failing to consider such impairments in determining plaintiff's RFC.

2. *Medical Evidence of RFC*

Plaintiff argues that the ALJ's RFC determination is cast into doubt inasmuch as the ALJ wholly failed to discuss the December 2005 assessment completed by medical consultant Lane. Plaintiff contends that without consideration of this assessment, the ALJ's RFC determination is not based upon any medical evidence of record.

The undersigned first notes that an ALJ is not required to discuss every piece of evidence submitted. An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. <u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998). Further, a review of the ALJ's written decision shows him to have identified and discussed all the evidence of record which was identified and discussed by medical consultant Lane in his assessment. As such, if there was sufficient medical evidence upon which consultant Lane could render a reviewing opinion as to plaintiff's RFC, as plaintiff argues, it necessarily follows that this same evidence was sufficient for the ALJ to render such an opinion. Nevertheless, an ALJ is not bound by an earlier RFC

assessment by a medical consultant made at the initial determination level. See 20 C.F.R. §§ 404.1546, 416.946 (at the administrative hearing level, responsibility for assessing claimant's RFC rests with the ALJ and not the medical consultant); Hilkemeyer v. Barnhart, 380 F.3d 441, 447 n.4 (8th Cir. 2004). In addition, at the time of his written decision, the ALJ here had before him evidence which was not a part of the record when consultant Lane rendered his opinion, and specifically, Dr. Hicks' examination and the testimony of plaintiff and her father adduced at the administrative hearing.

As such, upon review of the all the evidence of record, including Dr. Hogg's psychological evaluation wherein objective testing demonstrated plaintiff's ability to perform certain work-related tasks; Dr. Hicks' examination wherein he determined plaintiff to have a GAF of 55/65 indicating moderate to mild symptoms; and the reports of the Special School District and MERS-Goodwill describing plaintiff's social and work behaviors, it cannot be said that the ALJ's RFC determination that plaintiff had the mental RFC to perform simple repetitive work and was not otherwise limited in performing light work, was not supported by substantial evidence on the record as a whole, including some medical evidence. Although an inconsistent position may be drawn from the evidence, the Court must affirm the ALJ's decision if it is supported by substantial evidence. Goff, 421 F.3d at 789. See also Steed v. Astrue, 524 F.3d 872, 875-76 (8th Cir. 2008).

3.   *Development of the Record*

Plaintiff contends that the ALJ failed in his duty to fully and fairly develop the record as to plaintiff's functional abilities to perform work-related tasks.

It is well established that the ALJ bears a responsibility to develop the record fairly and fully, including in cases where an attorney represents the claimant at the administrative hearing. Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004). "This duty includes the responsibility of ensuring that the record includes evidence from a treating physician, or at least an examining physician, addressing the particular impairments at issue." Strongson v. Barnhart, 361 F.3d 1066, 1071-72 (8th Cir. 2004). In this case, as discussed supra at Section V.B.2, there was substantial evidence in the record from examining physicians and/or psychologists, as well as from vocational sources, from which the ALJ could determine the extent to which plaintiff's functional abilities were affected by her impairments. As such, the failure here to contact a treating source for clarification, as suggested by plaintiff, or to obtain additional evidence was not error and did not constitute a failure to fully develop the record. Strongson, 361 F.3d at 1071-72; Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994); 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

Therefore, in light of the above, it cannot be said that the ALJ's RFC determination was not based on substantial evidence on the record as a whole. A reading of the ALJ's decision shows him to have conducted an independent and thorough review of all the

evidence of record, including the evaluation by Dr. Hogg and the examination by Dr. Hicks, as well as plaintiff's school records and various vocational reports. In finding plaintiff capable of performing work-related functions, the ALJ here considered the medical records, the observations of examining professionals and others, and the plaintiff's own description of her symptoms and limitations. Substantial evidence on the record as a whole supports this determination. <u>Goff</u>, 421 F.3d at 793; <u>Krogmeier</u>, 294 F.3d at 1024.

C.    <u>Past Relevant Work</u>

In his written decision, the ALJ determined that plaintiff had the RFC to perform her past relevant work as a school cafeteria kitchen helper, fast food restaurant cashier, grocery clerk/cashier, or snack bar food prep/cashier. Plaintiff claims that the ALJ committed legal error in this determination inasmuch as he failed to undergo the required function-by-function analysis of these jobs, and specifically the mental demands of such work, before determining that plaintiff could perform the work required.

In making the determination that a claimant is able to perform her past relevant work, the ALJ has an obligation to make explicit findings regarding the physical and mental demands of the claimant's past work, and to compare those demands with the claimant's RFC to determine whether she can perform the relevant duties. <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000); <u>Groeper v. Sullivan</u>, 932 F.2d 1234, 1238-39 (8th Cir. 1991). The failure

of an ALJ to meet his obligation to make specific findings as to the demands of a claimant's past relevant work does not require remand, however, if the record contains substantial evidence that claimant can indeed perform her past work. Battles v. Sullivan, 902 F.2d 657, 659 (8th Cir. 1990).

In the instant case, as asserted by the plaintiff, the ALJ engaged in no specific discussion relating to the mental demands of plaintiff's past work as a school cafeteria kitchen helper, fast food restaurant cashier, grocery clerk/cashier, or snack bar food prep/cashier. In the particular circumstances of this case, however, remand is not required.

In his written decision, the ALJ set out the evidence of record describing plaintiff's mental ability to perform work-related functions. Specifically, the ALJ described Dr. Hogg's findings that plaintiff attended to tasks adequately and understood test instructions easily; that plaintiff's measured IQ performance placed her at the upper limits of borderline intellectual functioning; that her measured strength on working memory tasks was contrary to the presence of any current significant attention problems; that plaintiff's reading, writing and math skills placed her at the low average range; and that plaintiff would do better on nonverbal reasoning tasks and work tasks not requiring advanced academic skills or a rapid rate of responding. Plaintiff had no problems with basic activities of daily living. The ALJ also described Dr. Hicks' findings that plaintiff's speech was normal in rhythm and rate and that her flow of thought was good; that

- 33 -

plaintiff's insight and judgment were fair and that her memory was generally intact; and that plaintiff's current GAF score of 55 indicated moderate difficulty in functioning. The ALJ also noted that the medication recently prescribed by Dr. Hicks resulted in plaintiff being able to focus and do "normal" things. Most significantly, however, the ALJ set out plaintiff's previous and current work activity and specifically noted plaintiff's first job (at the airport snack bar) to have worked out but that she quit the job because of bad hours; her previous three-year work period at the grocery store, from which she was terminated for "not minding her own business"; and her current work at the school cafeteria (held since April 2005) for which she had a job coach, but that the coach did not work along side her.

The ALJ's finding that plaintiff retained the RFC to perform her past relevant work as a school cafeteria kitchen helper, fast food restaurant cashier, grocery clerk/cashier, or snack bar food prep/cashier is supported by the facts that plaintiff was currently working in such a position and had been working in this position for over a year; that she had earlier quit some of these positions due to reasons unrelated to her ability to perform the work; that in one such position that she held for three years, she was terminated for reasons unrelated to her performance; and that there was no evidence that plaintiff's condition had deteriorated to preclude her performance of such previous work. See, e.g., Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004); Riley v. Apfel, 198 F.3d 251 (8th Cir. 1999) (table) (unpublished)

(per curiam).[4]  In addition, plaintiff's own description of this past relevant work, as summarized by the ALJ, as well as the medical and vocational records describing plaintiff's mental and vocational abilities are consistent with the ALJ's findings regarding plaintiff's RFC to perform her past work.  E.g., Zeiler, 384 F.3d at 936; Riley, 198 F.3d 251.[5]  Although plaintiff and her father complained of problems with distraction, the ALJ properly noted that there were no credible vocational records, reports, or documented medical evidence demonstrating that plaintiff suffered any attention deficit, and that, indeed, the vocational psychologist reported that plaintiff's measured ability to perform tasks was contrary to the presence of any significant attention problems.  Such evidence, coupled with the specific findings that despite her perceived deficits, plaintiff had been able to perform the identified work and currently performed such work, more than supports the ALJ's finding that plaintiff retained the RFC to perform her past relevant work.

Inasmuch as the developed record here contained enough information on plaintiff's past relevant work to constitute

_____

[4]The undersigned is aware that Riley is an unpublished opinion.  The opinion is cited, however, merely to note that the court in Riley used the same reasoning in reaching the conclusion made here, and not as authority for the legal proposition that remand is not required in limited circumstances where substantial evidence on the record as a whole supports the decision that the claimant can perform her past relevant work, despite the ALJ's failure to specify the actual demands of such past work.  This same reasoning was used in Padgett v. Shalala, 9 F.3d 114 (8th Cir. 1993) (table) (unpublished) (per curiam), as well.

[5]See n.4, supra.

substantial evidence upon which the ALJ relied to decide that plaintiff retained the ability to perform such past work, the ALJ's failure to make *specific* findings as to the demands of plaintiff's past relevant work and compare such demands with her current limitations does not require remand. <u>Battles</u>, 902 F.2d at 659; <u>see also</u> <u>Meyer v. Callahan</u>, 980 F. Supp. 1069, 1080 (W.D. Mo. 1997) (dicta) (citing <u>Battles</u>, 902 F.2d at 659).

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence may exist in the record that would have supported a contrary outcome or because another court could have decided the case differently. <u>Gowell v. Apfel</u>, 242 F.3d 793, 796 (8th Cir. 2001); <u>Browning v. Sullivan</u>, 958 F.2d 817, 821 (8th Cir. 1992). Accordingly, the decision of the Commissioner denying plaintiff's claims for benefits should be affirmed.

Therefore,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed and that plaintiff's Complaint be dismissed with prejudice.

The parties are advised that they have to and including **August 8, 2008**, by which to file any written objections to this Report and Recommendation. Failure to timely file objections may

result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).


_____
UNITED STATES MAGISTRATE JUDGE


Dated this  _28th_  day of July, 2008.